The STATE of Ohio, Appellee,

v.

SAVOIA, Appellant.

[Cite as *State v. Savoia* (1991), 76 Ohio App.3d 201.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–427.

Decided Nov. 7, 1991.

*Michael Miller,* Prosecuting Attorney, and *Bonnie L. Maxton,* for appellee.

*James Kura,* Public Defender, and *Paul Skendelas,* for appellant.

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Patricia Savoia, appellant, from an order of the Franklin County Court of Common Pleas revoking her probation and ordering the reinstatement of the former sentence of three to ten years and a fine of $5,000. Appellant sets forth the following assignments of error:

"First Assignment of Error

"The trial court failed to introduce testimony from the probation officer who prepared the investigation reports and submitted the statement of violations with supporting allegations to the court.

"Second Assignment of Error

"The trial court erred in revoking appellant's probation for failing to report during the last three months of a five-year period of probation as the violation was not so serious as to warrant revocation.

"Third Assignment of Error

"The trial court denied appellant due process and equal protection of law by revoking her probation, due to her failure to make restitution and to pay a fine, without first making a determination that she was able to pay.

"Fourth Assignment of Error

"The trial court failed to issue a written statement as to the evidence relied upon and reasons for revoking probation."

On March 31, 1983, appellant was charged by bill of information with one count of theft in office, a violation of R.C. 2921.41. Appellant entered a guilty plea to the charge and was sentenced to a term of incarceration of not less than three years nor more than ten years. Appellant was also ordered to pay a fine of $5,000. On August 31, 1983, the sentence was suspended and appellant was placed on shock probation for a period of five years. Appellant was ordered to refrain from any further misconduct and to report to the probation officer at least once each month during the probation period and to obey all rules and regulations of the probation department. In addition, the court ordered appellant to pay the full cost of prosecution, pay full restitution in the amount of $22,304, to pay a fine of $5,000, and to maintain regular employment.

On July 25, 1988, the court issued a capias for appellant and ordered her probation to be suspended until she could be taken into custody. Appellant was arrested on February 10, 1991.

On February 20, 1991, a probable cause hearing was held in the Franklin County Court of Common Pleas. The prosecutor introduced testimony from Sandra Cobb, the probation officer who assumed appellant's case. Although Cobb never directly supervised appellant, she was permitted to testify from probation department records. According to Cobb, appellant reported in a manner acceptable to the probation department until May 12, 1988. Her last contact with the probation department was on that date. Furthermore, Cobb testified that, at the time of the issuance of the capias, appellant's payments towards the court costs, the fine and restitution totalled only $1,455. The

court found that there was probable cause to believe that appellant had violated the conditions of shock probation.

On March 6, 1991, appellant appeared before the trial court for her revocation hearing. The prosecution again presented the testimony of Cobb who indicated that appellant had been placed on probation on August 31, 1983. Out of the total amount which the court had ordered appellant to repay, Cobb indicated that appellant had repaid $1,455. Further, Cobb again noted that until the department's final contact with appellant on May 12, 1988, appellant's reporting had been satisfactory. On July 25, 1988, appellant was declared an absconder.

A March 28, 1988 notation from the probation department records indicated that appellant was caring for her two daughters who were still in high school. Apparently, one of the daughters had a child in February 1988, and appellant was supporting that child as well. The notation further indicated that appellant had been looking for a new job. Appellant was reminded of her obligation to pay $100 a month towards restitution and that she had not made a payment since November 17. Appellant stated that she was simply unable to do so.

Two witnesses testified for the defense that appellant had continuously resided in Franklin County since the time that she was placed on probation. Appellant was permitted to make a statement to the court prior to the court's decision. Appellant indicated that she knew her original actions had been wrong but indicated that she had simply been unable to make payments as her salary had been $6.50 an hour. On that salary, appellant was the sole supporter for her family. Appellant had been unable to obtain a better job since, because of her conviction, she lacked references and credentials. Appellant asked the court for more time in which to make restitution.

The trial court revoked appellant's probation and ordered the former sentence of three to ten years and a fine of $5,000 to be reinstated.

In her first assignment of error, appellant argues that the trial court violated numerous of her due process guarantees by permitting Cobb to testify at the probation revocation hearing when Cobb had had no personal contact with the appellant. Without a showing of good cause for the absence of the probation officer who had directly handled appellant's case, Cobb should not have been permitted to testify.

In *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the United States Supreme Court set forth a minimal due process requirement in dealing with parole revocation hearings. In *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, the Supreme Court applied the

doctrine of *Morrissey, supra,* to probation revocation hearings by extending the conditions specified in *Morrissey* to such proceedings. Quoting from *Morrissey,* the Supreme Court in *Gagnon, supra,* held that the following minimum requirements of due process applied to a probation revocation hearing:

" '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer, supra,* [408 U.S.] at 489 [92 S.Ct. at 2604, 33 L.Ed.2d at 499]." *Id.,* 411 U.S. at 786, 93 S.Ct. at 1762, 36 L.Ed.2d at 664.

In *State v. Miller* (1975), 42 Ohio St.2d 102, 71 O.O.2d 74, 326 N.E.2d 259, the Ohio Supreme Court considered the issue of whether or not the probationer's right to confront the witnesses against him was denied when the trial court permitted a probation officer who did not prepare the entries in the probation department record to testify to the contents of that record. The court held as follows in the syllabus:

"Where at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable or that a specific finding was made of good cause for not allowing confrontation, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings. (*Morrissey v. Brewer,* 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484], and *Gagnon v. Scarpelli,* 411 U.S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656], followed.)"

In the present case, Cobb testified concerning the records of the probation department and the alleged violations of appellant's probation. Cobb was not the person responsible for making those entries nor was she the person with personal knowledge as to the alleged violation. No testimony was offered to indicate why the probation officer originally assigned to appellant's case was not present to testify. Accordingly, without a showing that the probation

officer who prepared the entries was unavailable to testify, appellant has been denied her due process rights to confront the witnesses against her.

Appellant's first assignment of error is well taken and is sustained.

■ Appellant's third assignment of error will be addressed next. Appellant argues that she was denied due process and equal protection of law where the trial court revoked her probation, due to her failure to make restitution and to pay a fine, without first making a determination that she was able to pay that money. In *Bearden v. Georgia* (1983), 461 U.S. 660, 672–673, 103 S.Ct. 2064, 2072–2073, 76 L.Ed.2d 221, 233–234, the United States Supreme Court held as follows:

"We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment other than imprisonment. Only if alternative measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." (Footnote omitted.)

In the present case, the record indicates that appellant had been ordered to pay the costs of prosecution, a fine and full restitution. The total amount of money which appellant was ordered to pay back amounted to $27,440. Of that amount, appellant had repaid $1,455 during her probation period. However, appellant testified that she was employed making $6.50 an hour and that she was unable to find a better job because of her conviction for embezzlement. On that salary, appellant was supporting her two daughters who were currently in high school. In February, her oldest daughter had a baby girl who was also being supported by appellant. Appellant asked the court to give her more time in which to pay back the money.

In response to appellant's explanation, the court responded as follows:

"The Court: Let me tell you this, Mrs. Savoia. Anybody who knows me knows that if you steal money, you have to pay it back. And if you don't pay it back, you go to jail. It is just as simple as that, A–B–C."

■ Clearly, the court failed to take into consideration appellant's ability to pay back the money. In *Bearden,* the court emphasized the distinction between a person who refuses to pay back money that is owed and a person who is *unable* to pay back the money she owes. If the probationer has made all reasonable efforts to pay the fine or restitution, and yet is unable to do so through no fault of her own, it is fundamentally unfair to revoke her probation automatically without considering whether adequate alternative methods of punishing the probationer are available. See *Bearden, supra,* at 668–669, 103 S.Ct. at 2070–2071, 76 L.Ed.2d at 230–231.

Accordingly, appellant's third assignment of error is well taken and is sustained.

■ In her fourth assignment of error, appellant argues that the trial court erred in failing to issue a written statement as to the evidence relied upon and the reasons for revoking her probation. In *Gagnon, supra,* the Supreme Court specifically stated that a probationer whose probation is being revoked is entitled to " * * * a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole. * * * " *Id.,* 411 U.S. at 786, 93 S.Ct. at 1762, 36 L.Ed.2d at 664.

The state argues that, although a written statement of the court's findings is preferred under *Morrissey* and *Gagnon,* a probationer is not deprived of her rights where the court orally states the reasons for the revocation decision. See *State v. Delaney* (1984), 11 Ohio St.3d 231, 235, 11 OBR 545, 548–549, 465 N.E.2d 72, 76. However, in the present case, the trial judge stated in open court that he was revoking appellant's probation because she had failed to pay back the monies that he had ordered her to pay. In the court's entry, the court simply states that " * * * upon stipulated violations of said probation it is hereby ordered that probation be revoked and the balance of the original sentence be reimposed." Therefore, there is some confusion in the record as to the reasons for the revocation of appellant's probation and appellant was not sufficiently informed of the reasons why her probation was being revoked. See *Delaney, supra,* at 235, 11 OBR at 548–549, 465 N.E.2d at 76.

Accordingly, appellant's fourth assignment of error is well taken and is sustained.

■ In her second assignment of error, appellant argues that the trial court erred in revoking her probation because of her failure to report during the last three months of the five-year-period of probation. Appellant argues that this violation was not serious enough so as to warrant the revocation of her probation.

In *Morrissey, supra,* 408 U.S. at 479, 92 S.Ct. at 2599, 33 L.Ed.2d at 493, the court stated as follows:

" * * * In practice, not every violation of parole conditions automatically leads to revocation. Typically, a parolee will be counseled to abide by the conditions of parole, and the parole officer ordinarily does not take steps to have parole revoked unless he thinks that the violations are serious and continuing so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity. * * *

"Implicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole. * * * " (Footnote omitted.)

Therefore, although a trial court has broad discretion in determining whether or not to revoke a probationer's probation, that discretion is not unlimited. In the present case, the record indicates that appellant's assigned probation officer was aware of the fact that appellant's ex-husband had been threatening her and that he often waited for her outside the probation department. Furthermore, although appellant was found to be an absconder, the evidence is clear that appellant did not leave Franklin County and, in fact, she at all times was residing at a location known to be her residence. Therefore, although it may have been proper for the trial court to revoke appellant's probation if the trial court had followed procedures which properly safeguarded appellant's due process rights, the revocation of her probation, under these conditions, was improper.

Accordingly, appellant's second assignment of error is well taken and is sustained.

Based on the foregoing, appellant's first, second, third and fourth assignments of error are well taken and are sustained. The judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and TYACK, JJ., concur.